**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| **MICHAEL SMITH,**<br>**Individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KNIFE RIVER CORPORATION,**<br><br>**Defendant.** | **Case No. ________________________**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff—Michael Smith—brings this action individually and on behalf of all current and former hourly laborers (collectively, "Plaintiff and the Putative Collective Members"), who worked for Defendant—Knife River Corporation ("Knife River")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees.

## I. OVERVIEW

1. This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA.

2. Plaintiff and the Putative Collective Members are those similarly situated persons who worked for Knife River at any time during the relevant statutes of limitations through the final disposition of this matter, and were not paid on time and were not paid for all overtime hours at a rate of not less than time and one half their regular rate, in violation of federal law.

Case 1:25-cv-00237-DMT-CRH Document 1 Filed 10/10/25 Page 2 of 16

3. Although Plaintiff and the Putative Collective Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. Plaintiff and the Putative Collective Members were also not paid all wages due within the time limitations created by the FLSA and were not paid liquidated damages on their late paid wages.

5. During the relevant time period(s), Knife River knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members for the proper amount of overtime on a routine and regular basis.

6. Specifically, Knife River's regular practice—including during weeks when Plaintiff and the Putative Collective Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to deduct a 30-minute meal-period from Plaintiff and the Putative Collective Members' wages for a meal break they did not receive.

7. Knife River also requires Plaintiff and the Putative Collective Members to perform integral and indispensable work—attending safety meetings—off-the-clock and without pay prior to starting their respective shifts each day (the "Start-Up Work").

8. Knife River also failed to include all non-discretionary bonuses in the Plaintiff and Putative Collective Members' regular rate(s) of pay for purposes of calculating and paying their overtime compensation.

9. Finally, Knife River failed to pay Plaintiff and the Putative Collective Members all wages due within the time frame required by the FLSA, frequently paying employees weeks after the wages were due. Although most were eventually paid, Knife River failed to pay liquidated damages for the late pay to Plaintiff and the Putative Collective Members.

Case 1:25-cv-00237-DMT-CRH Document 1 Filed 10/10/25 Page 3 of 16

10. The effect of Knife River's practices was (and is) that all compensable time worked by Plaintiff and the Putative Collective Members was not (and is not) counted and paid; thus, Knife River has failed to properly compensate Plaintiff and the Putative Collective Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and applicable state law.

11. Knife River knowingly and deliberately failed to compensate Plaintiff and the Putative Collective Members for the proper amount of overtime at the proper rate on a routine and regular basis during the relevant time period(s).

12. Plaintiff and the Putative Collective Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

13. Plaintiff and the Putative Collective Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

14. Plaintiff also prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

15. Plaintiff—Michael Smith ("Smith")—was employed by Knife River in Wyoming, during the relevant time period(s). Plaintiff Smith did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek at a rate of not less than time and one half his regular rate of pay.[1]

[1] The written consent of Michael Smith is attached hereto as Exhibit "A."

16. The FLSA Collective Members are those current and former hourly laborers who were employed by Knife River, anywhere in the United States, excluding Oregon, at any time from October 10, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff worked and was paid.

17. Defendant Knife River Corporation is a foreign for-profit company, that is headquartered in, and licensed to do business in, the State of North Dakota and may be served through its registered agent for service of process: **CT Corporation System 120 W. Street Ave, Bismarck, ND 58504**.

## III.
## JURISDICTION & VENUE

18. This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

19. Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

20. This Court has general personal jurisdiction over Knife River because Oregon qualifies as its home state.

21. Venue is proper pursuant to 28 U.S.C. § 1391 in the District of North Dakota because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

22. Additionally, Knife River's corporate headquarters are in Bismarck, North Dakota, which is located within this District and Division.

Case 1:25-cv-00237-DMT-CRH Document 1 Filed 10/10/25 Page 5 of 16

## IV.
## BACKGROUND FACTS

23. Defendant Knife River is a provider of an aggregates-based, vertically integrated construction materials company across the United States.[2]

24. To provide its services, Knife River employed (and continues to employ) numerous hourly, non-exempt Laborers—including Plaintiff and the individuals that make up the putative collective.

25. Plaintiff and the Putative Collective Members were employed by Knife River as non-exempt Laborers who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

26. Plaintiff and the Putative Collective Members' job duties include excavation and construction type services for Knife River and its customers throughout the United States.

27. While exact job titles may differ, these hourly non-exempt employees were subjected to the same or similar illegal pay practices for similar work.

28. Importantly, none of the FLSA exemptions relieving a covered employer (such as Knife River) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective Members.

29. Plaintiff Surratt was employed by Knife River as an Operator in Casper, Wyoming since approximately April 2019.

30. Plaintiff and the Putative Collective Members typically worked five (5) days a week, and often ten (10) or more hours per day—these are referred to as "on-the-clock" hours.

[2] https://www.kniferiver.com/

31. In addition to their "on-the-clock" hours, Plaintiff and the Putative Collective Members regularly worked approximately three (3) or more hours "off-the-clock" per week and were not compensated for that time.

32. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Knife River resulting in the complained of FLSA violations.

33. Plaintiff and the Putative Collective Members are similarly situated with respect to their job duties – that is they are (or were) responsible for excavating and providing construction services to Knife River's customers throughout the United States.

34. Plaintiff and the Putative Collective Members are similarly (if not identically) situated with respect to their pay structure in that they are (or were) all paid on an hourly basis, are (or were) paid bonuses that were not included in their regular rate, are (or were) subject to an automatic meal break deduction, are (or were) required to perform Start-Up Work, and are (or were) paid late.

35. Plaintiff and the Putative Collective Members are therefore similarly situated with respect to the policies (and practices) of Knife River resulting in the complained of FLSA violations.

**Unpaid Meal Breaks**

36. Knife River has a policy and practice of automatically deducting one 30-minute meal period from Plaintiff and the Putative Collective/Class Members' daily time regardless of whether they perform compensable work during such "breaks" each shift.

37. Knife River's systematic deduction of the meal periods from Plaintiff and the Putative Collective/Class Members' "on-the-clock" time resulted (and continues to result) in Plaintiff and the Putative Collective/Class Members working overtime hours for which they were (and are) not compensated at the rates required by the FLSA.

38. Despite automatically deducting thirty (30) minutes from Plaintiff and the Putative Collective/Class Members' time each shift, Plaintiff and the Putative Collective/Class Members did not take a thirty (30) minute meal break.

39. Specifically, Plaintiff and the Putative Collective/Class Members' managers witnessed them working throughout their shifts without taking a meal break or only taking a short ten (10) to fifteen (15) minute meal break.

40. Plaintiff and the Putative Collective/Class Members' managers also ordered them to take short breaks of fifteen (15) minutes or less so that they could finish their daily work more quickly.

41. Knife River was (and continues to be) aware that Plaintiff and the Putative Collective/Class Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA.

42. Knife River benefitted from Plaintiff and the Putative Collective/Class Members' free labor, as Plaintiff and the Putative Collective/Class Members typically worked throughout their entire shifts without taking a break.

43. Knife River also knew Plaintiff and the Putative Collective/Class Members did not take their meal breaks because Plaintiff and the Putative Collective/Class Members worked alongside their managers who knew Plaintiff and the Putative Collective/Class Members worked throughout their respective shifts without stopping.

44. The thirty (30) minute meal period deduction resulted (and continues to result) in Plaintiff and the Putative Collective/Class Members working overtime hours for which they were (and are) not compensated at the rates required by the FLSA.

**Unpaid Pre-Shift Work**

45. Plaintiff and the Putative Collective/Class Members were not (and continue to not be) compensated for all the hours they worked for Knife River as a result of Knife River's corporate policy

and practice of requiring all hourly employees to arrive fifteen (15) minutes before their respective shift start time.

46. Specifically, Plaintiff and the Putative Collective/Class Members were (and continue to be) required to arrive fifteen (15) minutes prior to their shift start time for a safety/pre-shift meeting.

47. Although the meeting was (and continues to be) required, Plaintiff and the Putative Collective/Class Members were not allowed to clock in until their shift start time.

48. If Plaintiff and the Putative Collective/Class Members did not arrive on location fifteen (15) minutes prior to the start of their respective shift for the safety meeting, they would be disciplined for being tardy.

49. The Pre-Shift Work was (and continues to be) necessary for Plaintiff and the Putative Collective/Class Members to prepare for their respective shifts and allow them to begin construction work as soon as their respective shift starts, know what their assignments for the day are, and avoid unsafe practices which could inhibit their ability to complete their tasks.

50. Although this Pre-Shift Work is integral and indispensable to their job duties, Plaintiff and the Putative Collective/Class Members have not been compensated for this time because Knife River does not consider it to be compensable and does not permit Plaintiff and the Putative Collective/Class Members to record the hours spent performing this work.

51. In weeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Pre-Shift Work qualified as unpaid overtime.

52. Knife River required (and continues to require) Plaintiff and the Putative Collective/Class Members be on-site fifteen (15) minutes prior to when their respective shift starts.

53. As such, Knife River required (and continues to require) Plaintiff and the Putative Collective/Class Members to perform the Pre-Shift Work "off-the-clock" and without pay.

**Knife River Failed to Include Non-Discretionary Income in the Regular Rate**

54. Knife River paid out non-discretionary bonuses based on clearly defined metrics but failed to include these bonuses in the Plaintiff and Putative Collective Members' regular rates of pay.

55. Additionally, Knife River paid Plaintiff and the Putative Collective Members at varying hourly rates, depending on the work being performed, but failed to blend the rates together when calculating Plaintiff and the Putative Collective Members' regular rate of pay.

56. The non-discretionary bonuses paid to Plaintiff and the Putative Collective Members were meant to encourage and motivate them to work harder and to reward them for their hard work.

57. The non-discretionary bonuses were based upon a pre-determined formula established by Knife River.

58. Moreover, specific criteria had to be met in order to receive these non-discretionary bonuses.

59. When Plaintiff and the Putative Collective Members met the criteria, they were entitled to receive these non-discretionary bonuses.

60. Pursuant to 29 C.F.R. § 778.209, these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Plaintiff and the Putative Collective Member's regular rates of pay before any and all overtime multipliers were applied.

**Knife River Failed to Timely Pay Plaintiff and the Putative Collective Members**

61. Knife River also failed to timely pay Plaintiff and the Putative Collective Members all wages owed in the pay period in which they were earned.

62. Specifically, Kinfe River failed to include several compensable hours of compensation in the pay period in which they were earned and instead paid those hours weeks later in the form of "retro pay."

63. At the time the wage were owed, Knife River knew the amounts owed and simply did not timely pay them.

64. Where an employer does not pay an employee all wages due in the workweek the wages were earned, they violate the FLSA, and the employee is entitled to liquidated damages. *See Gaul v. Accura Health Ventures, LLC*, 651 F. Supp. 3d 1054, 1063 (S.D. Iowa 2023) (rejecting employer argument that an underpayment in one week and overpayment in another week offset and do not result in an FLSA violation).

65. Although Knife River eventually paid Plaintiff and the Putative Collective Members the late pay, it failed to include liquidated damages for the belated pay.

66. Knife River's failure to timely compensate Plaintiff and the Putative Collective Members overtime compensation at a rate of one and one-half times their regular rates of pay violated (and continues to violate) the FLSA and applicable state law.

67. Knife River knew or should have known that it was not (and is not) compensating Plaintiff and the Putative Collective Members for the proper amount of overtime compensation at the proper rate in violation of the FLSA.

68. Knife River knew or should have known that its failure to pay the correct amount of overtime to Plaintiff and Putative Collective Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective Members.

69. Knife River knew or should have known that not timely compensating Plaintiff and the Putative Collective Members for all overtime hours worked at the correct rate did cause, and continues to cause, financial injury to Plaintiff and the Putative Collective Members.

70. Because Knife River did not pay Plaintiff and the Putative Collective Members time and a half for all hours worked in excess of forty (40) in a workweek, Knife River's pay policies and practices willfully violated (and continue to violate) the FLSA and applicable state laws.

71. Because Knife River did not pay Plaintiff and the Putative Collective Members for all straight time worked, Knife River's pay policies and practices violated (and continue to violate) applicable state laws.

72. Plaintiff and the Putative Collective Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time pursuant to applicable state law.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

### A. FLSA COVERAGE

73. The preceding paragraphs are incorporated as though fully set forth herein.

74. The FLSA Collective is defined as follows:

**ALL HOURLY LABORERS WHO WERE EMPLOYED BY KNIFE RIVER CORPORATION, ANYWHERE IN THE UNITED STATES, EXCLUDING OREGON, AT ANY TIME FROM OCTOBER 10, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").**

75. At all material times, Knife River has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

76. At all material times, Knife River has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

77. At all material times, Knife River has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of excavating goods for international sale and in the construction of infrastructure or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the

production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

78. Specifically, Knife River employs thousands of hourly employees to provide services in the construction industry across the United States, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

79. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Knife River, these individuals provided services for Knife River that involved interstate commerce for purposes of the FLSA.

80. In performing work for Knife River, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

81. Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Knife River's customers throughout the United States. 29 U.S.C. § 203(j).

82. At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

83. The proposed classes of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 74.

84. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Knife River.

## B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

85. Knife River violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of trucks in the waste disposal industry, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

86. Moreover, Knife River knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

87. Knife River knew or should have known its pay practices were in violation of the FLSA.

88. Knife River is a sophisticated party and employer, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

89. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Knife River to pay them according to the law.

90. The decision and practice by Knife River to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

91. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

92. All previous paragraphs are incorporated as though fully set forth herein.

93. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of Knife River's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

94. Other similarly situated employees of Knife River have been victimized by Knife River's patterns, practices, and policies, which are in willful violation of the FLSA.

95. The FLSA Collective is defined in Paragraph 73.

96. Knife River's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Knife River, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

97. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

98. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

99. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

100. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

101. Absent a collective action, many members of the proposed FLSA Collective will not likely obtain redress of their injuries and Knife River will retain the proceeds of their violations.

102. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

103. Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated plaintiffs as defined in Paragraph 73.

## VI.
## RELIEF SOUGHT

104. Plaintiff Smith respectfully prays for judgment against Knife River as follows:

a. For an Order certifying the FLSA Collective as defined in ¶ 73;

b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to § 16(b) of the FLSA finding Knife River liable for unpaid wages, including unpaid overtime wages, due to Plaintiff Smith (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff Smith (and those FLSA Collective Members who have joined in the suit);

d. For an Order awarding the costs of this action;

e. For an Order awarding attorneys' fees;

f. For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

g. For an Order awarding Plaintiff Smith a service award as permitted by law;

h. For an Order compelling the accounting of the books and records of Knife River, at Knife River's expense (should discovery prove inadequate); and

Case 1:25-cv-00237-DMT-CRH Document 1 Filed 10/10/25 Page 16 of 16

i. For an Order granting such other and further relief as may be necessary and appropriate.

Date: October 10, 2025

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: */s/ Carter T. Hastings*
**Carter T. Hastings**
Texas Bar No. 24101879
carter@a2xlaw.com
**Lauren E. Braddy**
Texas Bar No. 24071993
lauren@a2xlaw.com
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Counsel for Representative Plaintiff and Putative Collective Members***